In re the ADOPTION OF J___ A___ G___.

No. 13468.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 8, 1984.

Motion for Rehearing Overruled and to Transfer to Supreme Court Denied Aug. 23, 1984.

Application to Transfer Denied Oct. 9, 1984.

Ivella McWhorter Elsey, Robert M. Sweere, Springfield, for petitioners-respondents.

Ginger T. Wagner, Springfield, for respondent-appellant.

PREWITT, Judge.

Respondents sought to adopt a male child born June 20, 1979. Appellant, his natural mother, did not consent to the adoption and respondents alleged in their petition that she had "willfully neglected to provide the minor child with proper care and maintenance for the period of at least one year immediately prior to the filing of this petition for adoption". The trial court so found and granted the adoption.

On June 1, 1979, appellant started living in Christian County at the residence of Jeanette Olson and Erwin Olson. Appellant was unmarried at the time. After the child was born in a Springfield hospital she returned to live with the Olsons until February 19, 1981. In December of 1979 appellant was married. Twice her husband lived at the Olsons with her, once slightly less than a month immediately following their marriage and once slightly longer than that, commencing in December of 1980.

In February 1981 appellant took the child with her to Illinois. In March 1981 appellant called Jeanette Olson and asked her if she would take care of the child and Mrs. Olson agreed to do so. Appellant agreed to pay her $40.00 a month. Appellant's sister brought the child to the Olsons, apparently on March 9, 1981. How it came to his attention is not apparent from the record, but on March 17, 1981, the deputy juvenile officer filed a petition in the Juve-

nile Court of Christian County, Missouri, alleging that "[t]he parents or other persons legally responsible for the care and support of the child have neglected and refused to provide proper support, education which is required by law, medical, surgical or other care necessary for the well-being of said child. Said child is otherwise without care, custody or support. The behavior, environment or associations of the child are injurious to his welfare or to the welfare of others."

On the day that petition was filed the juvenile court made findings, including those identical to the portions of the petition quoted above and ordered, "pending hearing upon said petition ... that the juvenile officer of this court take said child into his custody and detain said child in custody of Ervin and Jeanette Olson".

Shortly after the child was sent to the Olsons by appellant, she moved to a town in New York State where she lived with her husband, a soldier who was stationed there. On September 11, 1982, her husband was discharged from the service and they went to a town in Florida near where they had lived as children.

Following the petition being filed in the juvenile court, a home study was made and a hearing held on January 8, 1982. At that hearing the child was made a ward of the court and his "care, custody and control" was awarded to the Christian County Division of Family Services. Apparently on that date respondents took actual custody of him. By order dated January 12, 1982, the juvenile court removed the child from the Olsons. That order states he was "made a ward of the Court and legal custody as defined in RSMo, section 211.021(4) placed with the Division of Family Servic-

es".[1] On October 15, 1982, petitioners filed their petition seeking to adopt the child.

Appellant contends that she did not willfully neglect the child in the manner and for the period required by § 453.040(4), RSMo 1978[2]. That section provides that consent for an adoption is not required of "[a] parent who has for a period of at least one year immediately prior to the filing of the petition for adoption, either willfully abandoned the child or willfully neglected to provide him with proper care and maintenance." As earlier mentioned respondents claimed that appellant willfully neglected the child as stated in this section. That was the basis of the trial court's finding that consent was not required.

Certain principles are applicable in discussing this contention. The adoption statutes are to be strictly construed in favor of the natural parents. In the *Matter of the Adoption of R.A.B.*, 562 S.W.2d 356, 360 (Mo. banc 1978). Consent or facts making it unnecessary, are jurisdictional, and issues involving the fitness of the respondents and the welfare of the child are not reached until this jurisdictional requirement is met. Id., 562 S.W.2d at 357.

A parent's consent to adoption may not be dispensed with upon the ground of neglect unless it is shown that the neglect was intentional, deliberate, and without just cause or excuse, evincing a settled purpose to forego his parental duties over the period of time prescribed by the statute. In the *Matter of the Adoption of Baby Girl Doe*, 621 S.W.2d 87, 89 (Mo.App. 1981). The required neglect must exist for at least one year immediately prior to the filing of the petition. *In re Adoption of*

1. The trial judge who concluded this matter did not enter those orders. He was appointed to preside over those proceedings, case number JU181–11J, on January 10, 1983. He was the fourth trial judge to handle this matter, trial court number JU182–44TC & A, having been appointed on March 14, 1983. Case number JU181–11J apparently is still pending. On August 31, 1983 the court ordered that the Division of Family Services was "relieved of custody.

Case to remain open pending further order of Court."

On that date this matter was tried and the trial judge announced his ruling.

2. This section has since been amended. See § 453.040(4), RSMo Supp.1982. The parties and the trial court treated the matter as if § 453.040(4), RSMo 1978, was applicable and as it makes no difference in the outcome, we do not decide whether that is correct.

*W.B.L.*, 647 S.W.2d 531, 533 (Mo. banc 1983).

During most of the critical period and certainly during the last ten months of it the appellant was actively seeking to have custody of the child. The evidence was undisputed that she made two trips to Missouri while they lived in New York and two trips while they lived in Florida to that end. She employed a lawyer and spent considerable sums for travel, costs for depositions taken in Florida and attorney's fees. Respondents admitted that each time[a] she came to Missouri appellant attempted to see her son and while in New York and Florida wrote him and sent him gifts.

■ The neglect must be done "willfully" and we do not see how that can occur when appellant was making a reasonable attempt to have care and custody but was effectively prevented by others. After legal custody was placed in the Division of Family Services, appellant still had a duty to provide support, see § 211.021(4), RSMo 1978[3]. However, she was told by Jeanette Olson, one of the persons the court had originally placed the child with, in writing that "[t]he state of Missouri has assumed the cost of [the minor's] support. This will relieve you and [your husband] of financial responsibility." There is no indication that appellant was informed or believed otherwise. Previous to then appellant had agreed to send money for his support.

■ The findings of the trial court in this instance must be supported by clear, cogent and convincing evidence. In the *Matter of T.C.M.*, 651 S.W.2d 525, 530 (Mo. App.1983). In our view, as the care and custody was kept from appellant by legal proceedings and she reasonably attempted to have custody of the child and continued to show an interest in him, it was not shown by that standard that she "willfully neglected to provide him with proper care and maintenance". Compare *In the Matter of the Adoption of Baby Girl Doe*, supra, 621 S.W.2d 87; *Tomlinson v. O'Briant*, 634 S.W.2d 546 (Mo.App.1982); *In the Matter of T.C.M.*, supra, 651 S.W.2d 525.

Certainly the mother's previous attitude toward the child is not to be condoned, but her actions fell short of constituting willful neglect for the year immediately prior to the filing of the petition. That is the requirement of the statute that we cannot change or modify but must apply. It is understandable why the trial court held that the adoption was in the best interest of the child, but that is an issue we do not reach in the absence of clear, cogent and convincing evidence supporting the findings required by § 453.040(4).

The judgment is reversed and the cause remanded to the trial court with directions that it enter an order denying respondents' petition for adoption.

HOGAN, J., concurs.

MAUS, P.J., dissents, and files dissenting opinion.

MAUS, Presiding Judge, dissenting.

Acknowledging this case presents a clear basis for two views, I must respectfully dissent. " 'Willful neglect' as used in the statute has been construed to mean neglect that is '... intentional, deliberate and without just cause or excuse, evincing a settled purpose to forego ... parental duties over the period of time which the statute prescribes ....' " *Adoption of R.A.B. v. R.A.B.*, 562 S.W.2d 356, 357–58 (Mo. banc 1978). As the child was in the legal custody of others, while not directly applicable, a statutory definition seems helpful in measuring the conduct of a parent against that standard. It is "the failure to provide a child who is in the legal or actual custody of others with a continuing relationship, such as, but not limited to, communication or visitation, and, to the extent the parent is financially able, the failure to provide for the child's care." § 211.447.2(2)(b). The key element is the intent of the non-consenting parent. *In re Adoption of Rule*, 435 S.W.2d 35 (Mo.App.1968). The actions of a non-consenting parent before and after

---

**3.** Since amended, see § 211.021, RSMo Supp. 1982.

the critical period are properly considered in determining the intent of that parent during the critical period. *Young v. Young,* 588 S.W.2d 207 (Mo.App.1979). Evidence of abuse is the strongest indication of a parental attitude that would result in willful neglect.

The fact a non-custodial parent engages in periodic, perhaps reflexive, legal contests over a child does not establish the absence of neglect. Neglect is dispelled by a continuous, good-faith effort to fulfill the duties of a parental relationship. To find an absence of neglect from resistance to the termination of parental "rights", when there is no other substantial performance of parental "duties", could keep a child in an unstable status.

There was evidence that while the child was in her custody, the mother mistreated the child. She did not deny this evidence. There was also evidence she either participated in or tolerated mistreatment of the child by Ray Wilfong. When she returned the child to the Olsens in March of 1981, she said that she was afraid to expose him to Ray Wilfong.

However, in this connection it must be observed the record contains subsequent home studies from New York and Florida favorable to the mother and her attitude as a parent. Several people who currently know her in Florida testified by deposition to the same effect. Nonetheless, from the time she delivered the child to the Olsens, the mother contributed nothing to his support. Except at the time of hearings, her contact with the child consisted of an occasional letter or card or minor gift. Notwithstanding her testimony to the contrary, there was evidence to support the finding of the trial court that at least at times, the mother was able to make some financial contribution.

In my opinion, her contact with the child and demonstrated concern about the child since March of 1981 has been minimal and sporadic. For example, in January 1982, the child was made a ward of the juvenile court by agreement. Tentative arrangements were made to transfer the child to

New York where the mother lived. It is not clear why those arrangements were not consummated.

I find the mother's relationship with the child has been superficial, demonstrating that she did forego the performance of her parental duties during the critical period. Her resistance to the adoption cannot change that superficial relationship into anything other than neglect. Subject to a remand for the purpose of a conclusive determination of the status and rights of Ray Wilfong, I would affirm.