In re the ADOPTION OF K.A.S. and T.S., Respondent,

B.S., Respondent,

v.

M.S., Appellant.

No. WD 52018.

Missouri Court of Appeals, Western District.

Submitted July 16, 1996.

Decided Nov. 26, 1996.

J. Alexander Lozano, Harrisonville, for appellant.

James E. Hoke, Guardian ad Litem, Harold L. Caskey, Butler, for respondent.

Before HANNA, P.J., and SMART and EDWIN H. SMITH, JJ.

SMART, Judge.

This case involves the termination of parental rights of the natural mother of two young children, and the adoption of the children. M.S. (hereinafter referred to as "mother") appeals from the trial court's order terminating her parental rights to her two minor children and granting a petition for adoption of the children in favor of Barbara S., the children's paternal grandmother.

Mother has two minor children, K.A.S., born August 28, 1991, and T.S., born April 1, 1993. William, her husband, was the father of the children. On September 5, 1993, mother, together with her brother and her boyfriend, murdered William. She denies being present at the time of the murder, but she acknowledges that she agreed to the murder. On October 20, 1993, mother was arrested. Thereafter she pleaded guilty to one count of murder in the second degree and one count of armed criminal action. She was sentenced to twenty years on the murder charge and ten years on the armed criminal action charge, the sentences to be served concurrently. Mother is currently incarcerated and is not eligible for parole for at least several years. Mother's lifestyle after the murder included daily consumption of large quantities of alcohol and sexual activity with her murder accomplice boyfriend. After mother's arrest, the children stayed in Oklahoma with their maternal grandparents, until transferred to mother's aunt and uncle in Cass County. On December 1, 1993, Barbara S., the children's paternal grandmother, filed a petition for adoption or custody of her grandchildren. In her petition, Barbara S. alleged that mother had abandoned the children and had "willfully, substantially and continuously neglected to provide the minor children with necessary care and protection." On December 16, 1993, Barbara S. obtained temporary custody of the children and she brought the children to live with her in her home in northern Missouri. At that time, K.A.S. was a little over two years old and T.S. was eight months old. On May 24, 1994, the Probate Division of the Cass County Circuit Court issued letters of guardianship to the grandmother. Mother filed an answer

on October 17, 1995, opposing Barbara S.'s petition for adoption. The trial was conducted on October 25, 1995 and November 14, 1995, and the trial court entered its order terminating the parental rights of mother and granting Barbara S.'s petition for adoption. The trial court found, *inter alia,* that mother had willfully abandoned and neglected K.A.S. and T.S. for a period in excess of two years prior to the decree. Mother now appeals.

Mother raises only one point for appellate review and that is that the trial court was without jurisdiction to terminate her parental rights to the minor children without her consent and to grant Barbara S.'s petition for adoption because the statutory requirements provided in § 453.040(5) were neither pleaded nor proved. If a child is under the age of eighteen years old, it is necessary to have the written consent of the parents to the adoption. Consent or waiver of consent is jurisdictional. *Adoption of R.A.B. v. R.A.B.,* 562 S.W.2d 356, 357 (Mo. banc 1978). In the absence of consent, the trial court must first determine that willful abandonment or willful neglect has occurred. *In re C.W.,* 753 S.W.2d 933, 937 (Mo.App. 1988). Section 453.040(5), RSMo 1986,[1] which was in effect at the time of the filing of the petition, provided that consent of the parents was not required in the case of:

A parent who has for a period of at least six months, for a child one year of age or older, or at least sixty days, for a child under one year of age, immediately prior to the filing of the petition for adoption, willfully abandoned the child or, for a period of at least six months immediately prior to the filing of the petition for adoption, willfully, substantially and continuously neglected to provide him with necessary care and protection.

Section 453.040(5) thus specified a time period during which a child must have been willfully abandoned immediately prior to the filing of the petition for adoption in order for the court to find a waiver of consent—for a child one year of age or older, at least six months, and for a child under one year of

---

1. All statutory references are to RSMo 1986, unless otherwise indicated.

age, at least sixty days. With regard to neglect, as opposed to abandonment, the statutory period is six months as to both children. The word "immediately" in the context of the statute denotes "not being separate in time or space." *In re Adoption of W.B.L.*, 647 S.W.2d 531, 533 (Mo. banc 1983). In *W.B.L.*, an adoption petition was filed seeking termination of the parental rights of the natural mother so that the step-mother and natural father could adopt the child. *Id.* at 532. The language of § 453.040 at that time required an allegation and proof that the natural parent had willfully neglected or abandoned the child "for a period of at least one year immediately prior to the filing of the petition." *Id.* at 533. The adoption petition was filed October 19, 1979. The trial court, in its order, focused on the period from August of 1978 until September of 1979. Thus, the court regarded the mother's effort to see the child in early October, 1979, as outside the "statutory period," and the trial court granted the petition for adoption. On appeal, the Missouri Supreme Court reversed the order of the trial court, noting that the trial court had erred in failing to regard the critical dates of the statutory period as October 19, 1978, and October 19, 1979. *Id.* at 534. The court held that the applicable period of consideration is calculated backward from the filing date of the petition. Although the applicable statutory period has since been changed, the word "immediately" still appears in the statutory language.

∎ The important dates in this case are:

June 1, 1993 date commencing the period of six months immediately prior to the filing of the petition

September 5, 1993 date of the murder of the children's father

October 2, 1993 date commencing the period of sixty days immediately prior to the filing of the petition

October 20, 1993 date mother was arrested

December 1, 1993 date the petition for adoption was filed

November 14, 1995 date of the decree terminating mother's parental rights and granting adoption

The critical date as to the oldest child, is June 1, 1993, and the critical date as to the younger child is October 2, 1993. The children were in the care of mother until approximately mid-October, shortly before she was arrested. She delivered the children into the care of their maternal grandmother, apparently anticipating that her arrest was imminent. The evidence reveals that mother's lifestyle during the time following the murder (September 5, 1993) and before her arrest was inconsistent with the exercise of proper care, in that she was denying responsibility for the murder, consuming large quantities of beer each day, and regularly consorting with her murder accomplice while the children were in her care. However, the petition does not allege that the children were abandoned for the sixty day period immediately proceeding the filing of the petition, nor does it allege that they were abandoned for the six month period immediately preceding the filing of the petition. Indeed, the petition was filed less than ninety days after the murder. The petition alleges merely that mother has been charged with the murder of her husband, and that the children have been willfully abandoned by mother. The evidence did not focus on specific actions of the mother evidencing an intent to abdicate parental status and responsibilities, apart from the reprehensible misconduct itself. Also, the evidence did not focus on specific failures to care for the children, such as failing to provide nutrition, hygiene and so on.

The case was tried upon the basis that the murder, the subsequent incarceration, and the related factors constituted abandonment. The trial court relied upon *In the Interest of P.W.K.*, 815 S.W.2d 95 (Mo.App.1991) as the basis of the finding of abandonment. In that case, the court held that a mother who participated in the murder of her child's father had abandoned her child. The court did not hold that the murder of the child's father *ipso facto* constituted the abandonment. Rather, it was the fact of the murder together with related factors that constituted the abandonment. The court stated:

> The crime also has created a physical and emotional estrangement between [the child] and his mother during his formative

years and completely deprived [the child] of the care and support of his father. The only contact between [the child] and mother is four brief visits each year at the prison and several letters and cards sent by mother to [the child]. The letters from mother to [the child] show no remorse for mother's killing of father and she only implores [the child] not to believe what people tell the child about father's death. Mother's actions toward [the child] portray herself as a victim, rather than attempting to repair the damage caused by her crime and the subsequent physical and emotional estrangement.

*Id.* at 97.

The court in *P.W.K.* also mentioned the lack of financial support by the mother, and the mother's failure to make inquiry concerning the child's welfare, although the focus of the court's decision was the devastating betrayal of the child's interest, and the emotional estrangement resulting from the mother's denial of responsibility. *Id.*

Some or all of the key factors in *P.W.K.* may be true in this case. There is also evidence that the murder in this case may have been carried out in the presence of the children, although the mother denies it. The older child purports to remember the incident, and describes it, and has suffered from nightmares and behavioral disturbances. While the murder and all circumstances flowing from the murder are pertinent, in this case the petition failed to plead, and the evidence at trial does not focus on, the respective statutory periods immediately prior to the filing of the petition, except to the extent that there is some overlap with the date of the murder.

■ Adoption proceedings in Missouri are governed by statute. *Adoption of R.A.B.*, 562 S.W.2d at 357. Consent, or the facts which make consent unnecessary, are jurisdictional, and issues involving the fitness of the parent and the welfare of the child may not be reached unless there is jurisdiction. *In re Adoption of J___A___G___*, 676 S.W.2d 56, 58 (Mo.App.1984). The party petitioning for adoption must plead and prove the exception to the requirement of consent of the natural parents. *G.S.M. v. T.H.B.*, 786

S.W.2d 898, 901 (Mo.App.1990). In 1985, § 453.040 was amended in such a way as to remove from the statute a particular period during which the neglect or abandonment must have occurred. The statute simply stated that consent was not necessary if the natural parent's rights had been "terminated pursuant to law." In 1986, the legislature amended § 453.040 to bring back the language employed from 1982 to 1985 (specifying, as to abandonment, the sixty day and the six month period immediately prior to the petition). The statute has been amended numerous times since its initial adoption, but except for a brief period of a year or two, the statute has specified a precise time period as to which abandonment or neglect must be found. The legislature has drawn the statutes in such a way as to avoid terminating parental rights on the basis of anything fleeting or insubstantial.

■ Barbara S. points out that while mother pleaded as a defense that the petition failed to state a claim, she did not make a motion specifically directed to the inadequacy of the petition, either before or during trial. Respondent thus asserts, in effect, that mother has waived the jurisdictional issue and should be estopped from raising the jurisdictional issue on appeal, especially since the trial court found that, at the time of the decree, appellant had abandoned the children for a period of more than two years. This argument has some appeal to this court. Mother did not file an answer for two years, until a week before trial, and she never, until this appeal, raised any challenge to jurisdiction. However, Respondent provides us with no authority for the proposition that we can find a waiver, and we have found no such authority. It is well established that subject matter jurisdiction cannot be established by waiver, and that lack of jurisdiction may be raised at any time. *State Tax Comm'n v. Administrative Hearing Comm'n*, 641 S.W.2d 69, 72 (Mo. banc 1982).

■ The petition presumably could have been amended at any time prior to judgment to supply the missing jurisdictional prerequisite. *See Kemper v. Gluck*, 327 Mo. 733, 39 S.W.2d 330, 335 (banc 1931); 71 C.J.S. *Plead-*

*ing* § 288 (1951). However, in view of the statute, the petition would have been required to focus on the period prior to the filing of the petition, and not the period immediately prior to the amendment, as the key period for determining jurisdiction of the subject matter. Moreover, the trial court would have been required to find that such abandonment occurred during the statutory period. In this case, the court made no such finding as to the period applicable to either child. Consequently, the jurisdictional defect is not ameliorated by the terms of the judgment. We have no alternative but to vacate the judgment.

We vacate the judgment, and we remand the case to the trial court. Where there is a possibility that the jurisdictional defect may be cured, we may remand to the trial court to allow for possible correction of any defect and for further proceedings. *W.B.L.,* 647 S.W.2d at 534. In this case, the parties did not focus on the respective statutory periods in the evidence. While we are unaware of any substantial evidence of willful neglect or willful abandonment prior to the murder, the case will nevertheless be remanded to provide an opportunity for addressing the defect, if such evidence is available. Consequently, we direct the trial court to allow Barbara S. an opportunity to amend the petition in accordance with law, and to proceed with evidence supporting the petition. The trial court, of course, may make any temporary orders it determines to be necessary in the premises, and may undertake such other proceedings as may be appropriate.

The judgment is reversed and the case is remanded to the trial court for further proceedings.

All concur.