In the Matter of the ADOPTION OF Minor Child R__ (d.o.b.5/11/92) (F) and Minor Child R__ (d.o.b.4/8/94) (F).

J__ S__ B__ and M__ S__
B__, Respondents,

v.

K__ E__ R__, Appellant.

No. 23626.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 27, 2000.

Carr L. Woods, Monett, for appellant.

Cordelia F. Herrin, Melton & Herrin, Cassville, for respondents.

CROW, Judge.

K___ E___ R___ ("Father") appeals from a judgment granting the petition of M___ S___ B___ ("Mother") and her husband, J___ S___ B___ ("J___"), to adopt E___ R___ E___ R___ ("Child One") and B___ L___ L___ R___ ("Child Two"). Child One and Child Two were born to Mother during her marriage to Father; he sired both children.

The following chronology is pertinent to Father's two claims of error.

May 11, 1992. Child One is born.

September 1993. Father, a member of the armed forces of the United States, is assigned to overseas duty and departs the United States.

April 8, 1994. Child Two is born.

May 5, 1994. Father, still on active duty overseas, is taken into custody for murder of another serviceman.

November 28, 1994. A court-martial convicts Father of murder and sentences him to fifty years' imprisonment, forfeiture of all pay and allowances, and reduction in rank to E 1.

June 1995. Father is returned to the United States and imprisoned at the United States Disciplinary Barracks, Fort Leavenworth, Kansas.

September 1995. Circuit Court of Barry County dissolves the marriage of Mother and Father, awarding Mother "full care and custody" of the two children.

January 20, 1996. Mother marries J___.[1]

February 10, 1998. Mother and J___ file "Petition for Step Parent Adoption" wherein they pray to adopt Child One and Child Two. Petition avers, *inter alia:* "[Father] has abandoned said minor children for a period in excess of one (1) year."

October 29, 1999. Adoption petition is tried. Father, still imprisoned, is represented by court-appointed counsel. Child One and Child Two are represented by their guardian ad litem.

December 16, 1999. Trial court files judgment granting adoption. Judgment includes comprehensive findings of fact and conclusions of law.

As an introduction to the first of Father's two claims of error, this opinion points out that adoptions in Missouri are governed by §§ 453.005–.170, RSMo 1994, as amended. Section 453.030, RSMo Cum. Supp.1997, was in force when Mother and J___ filed the adoption petition. As Child One and Child Two were under the age of eighteen years, subdivision (2)(a) of sub-

---

1. J___ testified he and Mother began living together in November 1994 in Barry County. The household consisted of J___, Mother, Child One and Child Two.

section 3 of § 453.030 required Father's consent to the adoption, subject to certain exceptions, one of which is set forth in the next paragraph.

Section 453.040, RSMo Cum.Supp.1997, was in force when Mother and J— filed the adoption petition. It read:

"The consent to the adoption of a child is not required of:

. . .

(7) A parent who has for a period of at least six months, for a child one year of age or older, . . . immediately prior to the filing of the petition for adoption, willfully abandoned the child. . . ."

In the instant case, Father did not consent to the adoption of Child One or Child Two. Consequently, Child One and Child Two could not be adopted unless, by reason of § 453.040(7), Father's consent was not required.

In its conclusions of law, the trial court noted Father had "withheld his consent." Addressing that subject, the trial court ruled the "controlling statute" was § 453.040, RSMo Cum.Supp. *1998.* The version of § 453.040 in RSMo Cum.Supp. 1998 took effect July 1, 1998 (after the adoption petition was filed but more than a year before trial). The 1998 version of § 453.040 contains a subsection "(7)" identical to subsection "(7)" of the 1997 version, quoted above. Additionally, the 1998 version of § 453.040 contains subsection "(8)." No subsection "(8)" appeared in the 1997 version of § 453.040.

Under subsection "(8)" of § 453.040, RSMo Cum.Supp.1998, the consent to the adoption of a child is not required of a parent "whose rights to the child may be terminated for any of the grounds set forth in section 211.447, RSMo, and whose rights have been terminated after hearing and proof of such grounds as required by sections 211.442 to 211.487, RSMo." Subsection "(8)" of § 453.040, RSMo Cum. Supp.1998, permits a petition for termination to be filed "as a count in an adoption petition."

■ Section 211.447, referred to in § 453.040(8), RSMo Cum.Supp.1998, was— like § 453.040—amended effective July 1, 1998 (after the adoption petition was filed but more than a year before trial).

Father's first point relied on:

"The trial court erred in granting termination of [Father's] parental rights by applying sections 453.040 RSMo 1998 and 211.447 RSMo 1998 because the . . . petition for adoption was filed on February 10, 1998 and sections 453.040 and 211.447 RSMo 1998 took effect on July 1, 1998 and that the 1998 revisions enacted in 1998 resulted in substantive changes in the 1997 sections and should not have been applied retroactively."

Father cites *In re the Interest of S.L.J.,* 3 S.W.3d 902 (Mo.App. S.D.1999). There, a petition to terminate a parent's rights to two children was filed February 9, 1998. *Id.* at 905. The case was heard August 12, 1998; a judgment terminating parental rights was filed January 12, 1999. *Id.*

One of the questions this court faced in *S.L.J.* was whether the juvenile court was correct in applying the 1997 version of § 211 .447 (which was in force when the petition was filed) or whether the juvenile court should have applied the 1998 version of § 211.447 (which took effect while the case was pending in the juvenile court).

This court held in *S.L.J.* that the 1998 version of § 211.447 created new grounds for terminating parental rights, hence the 1998 version could not be applied retroactively. *Id.* at 905–06. Accordingly, the juvenile court in *S.L.J.* was correct in applying the 1997 version. *Id.* The rationale for this court's holding is clearly articulated in *S.L.J.* and need not be repeated here.

Although *S.L.J.* involved § 211.447, whereas the instant case involves § 453.040, the analysis is the same, i.e., subsection "(8)" in the 1998 version of § 453.040 creates a basis for granting an adoption without a parent's consent that did not exist in the 1997 version. Conse-

quently, the 1998 version of § 453.040 made a substantive change in the law.

Consistent with the logic of *S.L.J.*, this court holds the trial court in the instant case erred in ruling that the 1998 version of § 453.040 was the controlling statute. As the 1997 version of § 453.040 was in force when Mother and J— filed the adoption petition February 10, 1998, the trial court should have applied the 1997 version. That is significant because, as we have seen, there was no subsection "(8)" in the 1997 version, and without subsection "(8)," § 211.447 is not brought into play.

■ Therefore, the only statutory provision that would allow Mother and J— to adopt Child One and Child Two without Father's consent is § 453.040(7), RSMo Cum.Supp.1997. That brings this court to Father's second point:

> "The trial court erred in finding that [Father] had willfully abandoned the minor children for a period of six months prior to the filing of the step-parent adoption petition and that [Father's] parental rights should be terminated because the clear and unequivocal evidence established that [Father] did not have monies or funds available to him as no funds were paid to him while incarcerated in military prison and that [Respondents] made a deliberate and calculated decision to isolate the minor children from [Father] by denying contact with [Father], by refusing phone calls from [Father], by returning mail from [Father], by using the name of [B—] as the children's last name and not [R—], and by not traveling to Fort Leavenworth, Kansas to afford visitation between the children and [Father] which actions, by [Respondents] own testimony resulted in the children not knowing the existence of [Father.]"

*In re the Adoption of K.A.S.*, 933 S.W.2d 942 (Mo.App. W.D.1996), involved an earlier version of § 453.040—the version in RSMo 1986. Subsection "(5)" of that version, like subsection "(7)" of 1997 version (quoted earlier), provided that consent to an adoption was not required of a parent "who has for a period of at least six months, for a child one year of age or older, . . . immediately prior to the filing of the petition for adoption, willfully abandoned the child." *K.A.S.* held the six-month period of willful abandonment must occur *immediately prior* to the filing of the adoption petition. *Id.* at 945. Consequently, as the adoption petition in *K.A.S.* was filed December 1, 1993, the consent of the parent of a two-year-old child was not required if, during the period from June 1, 1993, to December 1, 1993, the parent willfully abandoned the child. *Id.* at 944–45.[2]

In the instant case, Child One and Child Two were more than one year of age when Mother and J— filed the adoption petition February 10, 1998. It is evident from *K.A.S.* that in order for Mother and J— to adopt Child One and Child Two without Father's consent, the evidence had to demonstrate Father willfully abandoned Child One and Child Two during the six-month period from August 10, 1997, to February 10, 1998.

■ Accordingly, this court shall examine the evidence to see whether it is sufficient to support a finding of willful abandonment by Father during that six-month period.[3] In that examination, this court views the evidence and reasonable inferences therefrom in the light most favorable to the trial court's findings, *In re Matter of C.W.*, 753 S.W.2d 933, 935[1] (Mo.App. E.D.1988), giving due regard to

---

**2.** In construing the "immediately prior" requirement of § 453.040(5), RSMo 1986, *K.A.S.* relied on *In re Adoption of W.B.L.*, 647 S.W.2d 531 (Mo. banc 1983). *K.A.S.*, 933 S.W.2d at 945.

**3.** The parties' briefs recite evidence about the conduct of Father, Mother and J— long before August 10, 1997. Father's conduct before that date is irrelevant except as it might shed light on whether his intent between August 10, 1997, and February 10, 1998, was consistent with willful abandonment.

the trial court's opportunity to assess credibility of the witnesses. *In the Matter of I.D.*, 12 S.W.3d 375, 376[2] (Mo.App. S.D. 2000).[4]

Father proclaims, and the record confirms, that neither Mother nor J__ ever took either child to visit Father after he was incarcerated at Fort Leavenworth. Additionally, Mother admitted she refused to accept "collect" telephone calls from Father during his incarceration there, except for one or "maybe two." Furthermore, Mother did not supply Father the mailing address of her present residence, where she, J__ and the two children live.[5]

This court's purpose in recounting Mother's conduct in the preceding paragraph is not to imply she behaved improperly, but instead to illustrate the difficulty encountered by Father in maintaining contact with Child One and Child Two. Apparently, Father's only possible avenue of communication during the crucial six-month period from August 10, 1997, to February 10, 1998, would have been to get Mother's address from another source and use a third party as a method of communication.[6]

It is inferable from the record that Father did not pursue that possibility. His testimony included this:

"[A]fter [Mother] got married ... I stopped calling and I had to stop writing, but I did make attempts until 1997. ... I kept writing my kids ... even after she was married, but they had moved and the letters continued to come back to me, so I had to stop, because I had no contact, didn't know where she was, and I tried to send letters to her dad to her old address and they were sent back[.]"

Mother acknowledged it was "possible" she returned cards and letters from Father. However, she did not indicate any arrived during the six-month period immediately prior to the filing of the adoption petition.

The trial court found, *inter alia:* "While at first [Father] may have written letters while at Leavenworth, that has stopped."

The trial court recognized Father has had no income since his 1994 court-martial conviction, hence Father has had no money to contribute toward the children's support. However, there was evidence that financial aid for the children might have been available from the military despite the forfeiture of all pay and allowances in Father's sentence.

Father testified he could have kept a child support allowance of $389 per month, but Mother refused it, saying she "didn't want anything to do with me anymore." According to Father: "She would have to have filled out the form and I would have to have signed them, but it could have been arranged." Asked whether the allowance was still available, Father replied, "That is not possible anymore, sir."

Mother's testimony contradicted Father's. Her testimony:

"Q. At the time of his court-martial did he ever indicate to you that you would be eligible to receive funds

4. This court is mindful that when evidence is presented by deposition, an appellate court does not defer to a trial court's assessment of credibility. *Howard v. Missouri State Board of Education*, 913 S.W.2d 887, 888[2] (Mo. App. S.D.1995). In the instant case, the evidence included deposition testimony by Father and one of his fellow inmates.

5. Mother testified she did keep Father informed of her mailing address until she, J__ and the children moved to the present residence. This court searched the record for the date of that move but failed to find it.

6. Father testified he sent Christmas presents to the children through the Salvation Army. His testimony is unclear about which years he allegedly did this and whether he did this at Christmas 1997 (the Christmas during the six-month period immediately preceding the filing of the adoption petition). Mother testified she received no gifts from the Salvation Army, Red Cross or United Way after 1995. The trial court found the children received no gifts from Father or his family after 1994.

from the military even after he was court-martialed?

Q. No.

Q. Did he ever indicate to you any sums of money such as $389 a month that you would be available to have?

A. No.

Q. Did he tell you about any forms you could fill out to get that money?

A. No."

The trial court's findings included this: "The Court does not find credible [Father's] testimony that benefits were available to [Mother] but that she failed to request such benefits at his court-martial."

The evidence, viewed in the light most favorable to the above finding, is sufficient to support it. Accordingly, this court accepts the premise that Father did not tell Mother about any opportunity to obtain a child support allowance from the military. While that was long before the six-month period immediately prior to the filing of the adoption petition, it provides some insight into Father's attitude concerning the children in 1994.

There was evidence that long before Father's arrest for murder, he displayed indifference and irresponsibility toward Child One (Child Two was born only a month before the arrest). The trial court made findings on numerous instances of such conduct; those findings need not be set forth here.

The trial court was unimpressed by Father's letter-writing after his incarceration at Fort Leavenworth. The trial court found: "[Father's] depth of interest and expressed commitment to both his minor children who are the subject of this proceeding ... has been engendered by his incarceration and the time for letter-writing and reflection that it necessarily entails."

On the ultimate issue of abandonment, the trial court concluded: "[T]he Court finds ... [Father] has willfully abandoned the minor children for a period in excess of six months prior to the filing of the step-parent adoption petition." That finding, if sustainable on appeal, allows Mother and J— to adopt Child One and Child Two without Father's consent. § 453.040(7), RSMo Cum.Supp.1997.

■ The standard of appellate review in adoption cases is set forth in *I.D., supra*, 12 S.W.3d at 376[1]. This court must affirm the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. Each adoption must be judged on its own unique set of facts. *In the Matter of K.L.C.*, 9 S.W.3d 768, 772[3] (Mo.App. S.D. 2000). Applying those precepts, this court holds the trial court did not err in finding Father willfully abandoned Child One and Child Two for the six-month period immediately prior to the filing of the adoption petition.

Intent to abandon is generally an inferred fact, determined by conduct within the statutory period, combined with relevant conduct both before and after such period. *Id.* at 773[9]. While Father's incarceration indisputably limited his ability to maintain contact with the children, confinement does not preclude a finding of abandonment.

In *In the Interest of R.K.*, 982 S.W.2d 803 (Mo.App. W.D.1998), a finding that an imprisoned father abandoned his son was upheld. *Id.* at 807. The opinion explained: "This volitional criminal activity has resulted in the separation from and lack of support of [the son] by [the father]. While incarcerated, [the father] has had only a token amount of ... communication with [the son]." *Id.* at [12].

Viewed favorably to the judgment here, the evidence supports a similar conclusion

in regard to the six-month period immediately prior to the filing of the adoption petition. This court therefore rejects Father's second point.

In granting the adoption, the trial court found it would be in the best interests of the children. Father assigns no error regarding that finding.

Judgment affirmed.

BARNEY, C.J., and GARRISON, J., concur.