151 S.W.3d 885 (2004)
In the Interest of J.B.D., a child under seventeen years of age.
Greene County Juvenile Office, Petitioner-Respondent,
v.
J.M.D., Respondent-Appellant.
No. 26031.
Missouri Court of Appeals, Southern District, Division One.
November 18, 2004.
Petition for Rehearing and Transfer Denied December 10, 2004.
Application for Transfer Denied January 25, 2005.
*886 John E. Kelly, Springfield, MO, for Appellant.
William C. Prince, Springfield, MO, for Respondent.
JAMES K. PREWITT, Judge.
J.M.D. ("Father"), as the alleged biological father of J.B.D. ("Child"), appeals the termination of his parental rights to Child. On appeal, Father claims that the trial court erred in terminating his parental rights because there was not clear, cogent, and convincing evidence to support the termination on the basis of abandonment under § 211.447.4(1)(b), RSMo 2000; repeated or continuous failure to provide necessary items for the care and control of Child under § 211.447.4(2)(d), RSMo 2000; or jurisdiction for one year and continuation of conditions that led to assumption of jurisdiction under § 211.447.4(3), RSMo 2000. The three bases noted were the *887 three statutory grounds indicated by the trial court for the termination of Father's parental rights to Child.[1]
Child was born on August 15, 2001, and taken into protective custody on or about August 16, 2001. At that time, Child was placed in the temporary legal and physical custody of the Missouri Department of Social Services, Division of Family Services, (now known as the Children's Division) pursuant to an order of the Juvenile Division of the Circuit Court of Greene County, which also adjudicated Child neglected and abused.
The petition to terminate Father's parental rights was filed on November 21, 2002. Following a hearing on the matter, the trial court entered judgment terminating Father's parental rights to Child on December 30, 2003. The trial court, based on clear, cogent, and convincing evidence, found three statutory grounds for the termination of Father's parental rights: (1) Child was abandoned by Father; (2) Child was neglected by Father, specifically that there was a repeated or continuous failure by Father to provide Child with adequate food, clothing, shelter, education, or other care and control necessary for Child's physical, mental, or emotional health and development, and that Father had failed, until after the petition was filed, to maintain a parental relationship with Child and to provide assistance for Child's food, clothing, and shelter needs; and (3) Child had been under the jurisdiction of the court for more than one year, and conditions leading to the assumption of that jurisdiction continued to exist.
In this appeal, Father raises three points, each focused on one of the statutory grounds on which the trial court based the termination of his parental rights. Father claims that there was not clear, cogent, and convincing evidence to terminate his parental rights on any of the three statutory grounds indicated by the trial court. According to Father, the trial court's findings on each of the statutory grounds were against the weight of the evidence.
The judgment in a termination of parental rights case will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. In re R.J.B., 30 S.W.3d 868, 870 (Mo.App.2000). We view the evidence in the light most favorable to the trial court's judgment and defer to the trial court's determinations regarding the credibility of witnesses. In re A.R., 52 S.W.3d 625, 633 (Mo.App.2001). It is only necessary to reverse or remand if this Court is left with a firm impression that the judgment is wrong. In re J.M.S., 83 S.W.3d 76, 82 (Mo.App.2002).
Where multiple statutory bases for the termination of parental rights are found, to affirm the judgment, we need only find that one of the statutory grounds was proven and that termination is in the best interests of the child. In re M.J. v. Greene County Juvenile Office, 66 S.W.3d 745, 747 (Mo.App.2001). Where there is no contention made in a point relied on or in argument that the trial court erred in concluding that the termination of parental rights was in the best interests of the child, it is only necessary to consider whether any one of the statutory grounds is supported by the evidence. In re S.L.J., 3 S.W.3d 902, 907 (Mo.App.1999).
*888 Father makes no such contention here regarding the trial court's determination that the termination of his parental rights to Child was in Child's best interests. Therefore, because it is dispositive, we need only discuss Father's first point, that the trial court erred in terminating his parental rights because there was not clear, cogent, and convincing evidence that he abandoned Child.
To terminate under § 211.447.4(1)(b), RSMo 2000, the statutory ground for abandonment, the juvenile officer must prove that Father, without good cause, left Child without any provision for parental support and failed to make arrangements to visit or communicate with Child, although able to do so. J.M.S., 83 S.W.3d at 82. By definition, abandonment is the "voluntary and intentional relinquishment of custody of a child with the intention that the severance be of a permanent nature or as the intentional withholding by a parent of his [or her] care, love, protection and presence without just cause or excuse." Id.
In determining whether abandonment has occurred, the court considers the parent's intent, which may be inferred by considering all of the evidence of that parent's conduct, both before and after the requisite six-month period. Id. Only the parent's conduct prior to the filing of the petition for termination may be considered to establish the six-month period. Id.
Father's last visit with Child was on January 3, 2002. On January 25, 2002, Father was arrested on two counts of sale of a controlled substance. Father remained at the Greene County Jail until he was transported to the Department of Corrections on July 18, 2002, to serve the seven-year sentence he received on the charges.
According to his testimony, upon his arrest, Father contacted Child's mother ("Mother") and instructed her to contact Father's attorney and the Children's Division ("CD") to inform them of his incarceration. Father testified that Mother told him that she had contacted CD and that Child also would be allowed to come home in two weeks.
Father did not directly contact his attorney or CD and testified that after the initial contact with Mother, he lost touch with her, and also had no luck in his attempts to call CD offices collect from prison. According to Father, he tried calling CD four or five times until 2003, and also made a request to go to the prison library so that he could find the address. Once he obtained the address, Father, who was incarcerated at three different facilities, maintained that he wrote letters to CD, including one in February of 2003, after he was served with the termination petition. Father testified that he wrote the letter in February, 2003, in response to the petition, to the address provided on the petition. Father also testified that he asked his own mother to get the address for him, or for someone to help her get it to him, because she was unable to read or write.
Liz Sayers, an alternative care worker at CD, handled the case involving Child from the time Child was taken into protective custody until February, 2002. Sayers testified that CD's original goal was to return Child to the parents. During the time Sayers handled the case, Father attended, or at least began participation in, individual and family counseling, the domestic violence program Hit No More, and parenting classes. Father also maintained a stable residence, to the extent that he stayed with Mother. Father agreed to a psychological or psychiatric evaluation and *889 signed all release of information forms requested by CD.
Regarding supervised visitation with Child, both Father and Mother generally visited Child together, but toward the end of Sayers' tenure on the case, such visitation "fell off[.]" Father attended family meetings and provided in-kind items to Child, although he never paid child support, but there was not any formal order for him to do so. The only program that Father did not attend or complete to any extent was an infant CPR and care program.
In February, 2002, the case was transferred to Luann McKee, also an alternative care worker at CD. During the time she handled the case, McKee had no involvement with or contact from Father until, according to her recollection, April, 2003. Within that 2003 communication, Father informed McKee of his incarceration.
From February, 2002 until April, 2003, Father had no visitation with Child and also no communication with Child, in terms of cards, letters, etc. Since April, 2003, Father consistently sent cards, letters, and tapes on which he would read books. Other than those items, Father sent no gifts or monetary support for Child. Subsequent to April, 2003, Father provided McKee certificates for programs that he had completed during his incarceration, including programs for anger management, self-improvement, relationships, and substance abuse.
According to a document provided by the Department of Corrections, Father's scheduled release date was May 24, 2004. Among the conditions of his release, Father must obtain a GED, not drink alcohol, and participate in a substance abuse program. Father's plans upon release were to secure employment and a place to live, and "do what [CD] want[s] me to do to get [Child] back." Upon his release Father hoped to either live with his mother in Springfield or participate in a 90-day transitional program and live at Harbor House while he looked for a job and his own place to live.
On the statutory ground of abandonment, within its judgment terminating Father's parental rights, the trial court stated the following:
[Child] has been abandoned by ... [Father] ... in that said minor child who is over the age one year has been without contact from ... [Father] ... for the six month period immediately prior to the filing of the Petition. .... McKee testified that [Father] had not visited the minor child or had contact with the Children's Division since January of 2002. The evidence indicated that [Father], who was incarcerated for his own volitional criminal acts, did not reestablish contact with the Division until April of 2003 upon being served with the Petition to Terminate Parental Rights herein. Subsequent to that date, [Father] has sent some letters and provided books on tape. Court does not find credible [Father's] testimony that from January of 2002 until April of 2003, he was unable to determine the address of the Division of Family Services in order to contact them regarding the well being of his child. Court finds that [Father] had attended meetings a[t] the Division and had relatives in this area he maintained contact with, who could have assisted him in ascertaining this information.
Section 211.447, RSMo 2000, addresses incarceration of a parent and notes that "incarceration in and of itself shall not be grounds for termination of parental rights[.]" § 211.447.6(6). Incarceration, however, does not excuse a parent's obligation to provide the child with a continuing *890 relationship. In re N.L.M., 101 S.W.3d 376, 381 (Mo.App.2003). Nor does incarceration excuse a parent's obligation to make monetary contributions toward the child's support, as financial contributions that assist with the child's needs evidence intent that a parent wishes to continue the parent-child relationship. Id. A parent's incarceration will undoubtedly limit the parent's ability to maintain contact with his or her children, but confinement does not preclude a finding of abandonment. In re Adoption of R, 31 S.W.3d 551, 556 (Mo.App.2000).
Father draws our attention to the J.M.S. case in which the termination of a father's rights was reversed because the evidence was insufficient to terminate the father's right on the statutory ground of abandonment. 83 S.W.3d at 85. Within that case the father, who was incarcerated, sent letters, pictures, poems, and Christmas presents to his child. Id. at 84. We agree that Father in the case before us sent similar items. The distinction, however, is that in J.M.S., the incarcerated parent sent such items throughout his incarceration, not only after the termination petition was filed. Id.
There was clear, cogent, and convincing evidence in the case before us to support the termination of Father's parental rights to Child based on the statutory ground of abandonment. Father's Point I is denied. As one of the statutory grounds was proven, we need not consider Father's remaining points in which he challenges the other two statutory grounds. M.J., 66 S.W.3d at 747.
The judgment is affirmed.
GARRISON, P.J., and RAHMEYER, J., concur.
NOTES
[1] In the same judgment, the trial court also terminated the parental rights of Child's mother and the person described as Child's legal father. Those parties have not appealed; their rights are not at issue here and will not be discussed.